### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SABRINA JORDAN,** | : | **CIVIL NO. 1:15-CV-1417** |
| | : | |
| **Plaintiff,** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **STERLING JEWELERS, INC.,** | : | |
| **t/d/b/a KAY JEWELERS,** | : | |
| | : | |
| **Defendant.** | : | |

### REPORT AND RECOMMENDATION

### I.   Introduction

This case involves a claim brought by the plaintiff, Sabrina Jordan, under the

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The gist of Jordan's

claim is that the defendant, Sterling Jewelers. Inc., continued to contact her to try to

collect a debt Jordan owed Sterling, and persisted in calling her repeatedly even after

Jordan revoked her consent to accept dunning telephone calls. Sterling has moved for

summary judgment on this claim, arguing that Jordan's sworn responses to

interrogatories, and other immutable and uncontradicted evidence, discloses that the

plaintiff never revoked her consent as she has claimed in this lawsuit. For her part,

Jordan has attempted to impeach her own prior sworn declarations regarding the

circumstances surrounding her revocation of this consent, but Jordan's efforts are incomplete and unavailing, since Jordan's own prior sworn declarations, and other independent evidence, continue to contradict her claims. Therefore, since the plaintiff has not adequately explained and contradicted her own, thoroughly discredited account of these events in a fashion that is sufficient to raise a disputed issue of material fact, it is recommended that summary judgment be entered in favor of the defendant.

## II.    Statement of Facts and of the Case

The pertinent facts in this case can be simply stated:  On December 7, 2010, plaintiff Sabrina Jordan completed a credit application with Sterling Jewelers, Inc., to obtain a Kay Jewelers credit card.  Jordan later obtained a new cellular telephone number, (717)701-1967.  On February 14, 2014, Jordan  purchased approximately $1,200 worth of jewelry from Sterling, making a down payment of $120.00, and agreeing to a purchase plan for the remainder of the jewelry purchase price.  At the time of this February 14, 2014, purchase Jordan updated her contact information with Sterling, providing Sterling with both her work telephone number and the x1967 number as numbers which Sterling could use to contact the plaintiff.

Jordan then fell into arrears on these jewelry payments.[1]  As a result, in 2015

---

[1]At her deposition Jordan indicated that she fell into arrears because she underwent surgery after making this jewelry purchase and persisted in this assertion until she was informed that her surgery took place four months *prior* to

Sterling began placing telephone calls to Jordan at the number she had provided in an effort to collect this delinquent debt.  These telephone calls, and Jordan's insistence that Sterling continued to make these calls after she revoked her consent to receive such calls, lies at the heart of this lawsuit, and the defendant's summary judgment motion.

As to this crucial question, Jordan has at various times made a series of factual assertions which contradict one another and are in turn contradicted by the otherwise undisputed evidence in the case.  For example, Jordan initially provided a clear and unequivocal chronology of these events, alleging in her sworn response to interrogatories that she "knows that she informed defendant to stop calling her in early April 2015."  (Doc. 34-5, ¶11.)  Indeed, apparently relying upon these unequivocal factual assertions by Jordan, plaintiff's counsel flatly stated in Jordan's complaint that she revoked her consent to receive these calls in April, 2015.  (Doc. 1 ¶¶18-21.)[2]

Immutable evidence, in the form of recording for all of Jordan's April 2015, telephone communications with collection agents working for Sterling, flatly

---

this jewelry purchase. Jordan never explained this contradiction at her deposition, or in subsequent proceedings.(Doc. 34-3, p. 108.)

[2]While we are compelled in our factual narrative to highlight the many contradictions in Jordan's account of these events, we wish to emphasize that nothing in this narrative is meant to in any way cast any aspersions upon plaintiff's counsel, who appear to have zealously and ethically represented Jordan's interests, even as her own internally conflicting accounts undermined those interests.

contradicted this factual assertion.   Simply put, in none of the five recorded communications between Jordan and Sterling did the plaintiff revoke her consent to receive collections calls.   Quite the contrary, in several instances, the person answering the telephone simply hung up on this caller, while in other instances, the individual answering the phone engaged in nonsensical, evasive and unresponsive communications with the collector, who was simply attempting to get Jordan to pay a delinquent bill.

With Jordan's initial chronology wholly undermined by this uncontradicted evidence, Jordan then revised her recollection of these events, stating that she may have revoked her consent prior to April 2015, in February or March 2015.   Jordan's revised chronology did not explain why she continued to entertain calls from Sterling in April 2015, after she had ostensibly revoked her consent.   Furthermore, while Sterling was unable to retrieve these earlier recorded conversations, it was able to produce a log of its communications with Jordan in February and March of 2015. That call log, and other sworn statements made by Jordan in her responses to interrogatories, further contradicted this revised factual claim in ways which are unexplained.   Moreover, even this revised chronology was contradicted by other sworn statements made by Jordan in her answers to interrogatories.

Specifically, Jordan has sworn that: "Plaintiff remembers instructing a male representative of defendant to stop calling her.   In response to her revocation, the male

representative told her she owed and [sic] a debt and should pay it." (Doc. 34-5, ¶12.)

Sterling's call logs reflect only three occasions in February and March of 2015, when

Jordan spoke over the telephone with a representative of Sterling.  According to

Sterling's call log on February 4, 2015, a company representative spoke with Jordan

regarding her delinquent debt and was assured that Jordan would "tale care of it."

(Doc. 34-13.)  Four days later, on February 8, 2015, another Sterling representative

spoke with Jordan who stated that she was waiting on her income taxes to come in and

would then make a payment on this account.  (Id.)  Finally, on March 28, 2015,

Sterling's call log reflects a conversation between a Sterling representative and Jordan

in which Jordan promised she would call in by April 2, 2015, to make a payment. (Id.)

Notably these call logs are all entirely inconsistent with Jordan's claim that she

revoked her consent to receive calls in February or March 2015.  Further, these call

logs contradict Jordan's account of events in another, fundamental way.  Currently,

Jordan's TCPA claim rests upon her claim that:  "Plaintiff remembers instructing a

male representative of defendant to stop calling her.  In response to her revocation, the

male representative told her she owed and [sic] a debt and should pay it." (Doc. 34-5,

¶12.)  It is entirely uncontradicted, however, that the Sterling representatives who

spoke to Jordan were women, not men. (Doc. 43-2.)  Thus, Jordan's claim rests upon

factual pillars which are completely contradicted by independent uncontested

evidence, and are wholly undermined by Jordan's own sworn statements, sworn

statements which are at war with one another and with the other immutable evidence in this case.

It is against this factual backdrop that we consider Sterling's motion for summary judgment. This motion is fully briefed by the parties and is, therefore, ripe for resolution. For the reasons set forth below, it is recommended that the motion be granted and this case be dismissed.

## III.   Discussion

### A.   Rule 56–The Legal Standard

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub.

Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials."  Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial."  Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982).  "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's

own interpretation of events and, essentially, opinion testimony.  See Lujan v. Nat'l

Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a

properly supported summary judgment motion by simply substituting the "conclusory

allegations of the complaint or answer with the conclusory allegations of an

affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D.

Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence

cannot be accepted as true).

　　　Furthermore, in a case such as this, where a defense summary judgment rests,

in part, upon the plaintiff's own prior sworn statements, further considerations apply.

It is well-settled that the plaintiff cannot create a disputed issue of fact simply through

the expedient denial of her past sworn statements.  Quite the contrary, it is entirely

clear that:

> [A] party may not create a material issue of fact to defeat summary
> judgment by filing a [sworn statement] disputing his or her own [prior]
> sworn testimony without demonstrating a plausible explanation for the
> conflict. Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir.1991). The
> "sham affidavit" doctrine refers to the trial courts' "practice of
> disregarding an offsetting [sworn statement] that is submitted in
> opposition to a motion for summary judgment when the [statement]
> contradicts the [party's] prior . . . testimony." Shelcusky v. Garjulio, 172
> N.J. 185, 797 A.2d 138, 144 (2002). When a party does not explain the
> contradiction between the subsequent affidavit and the prior deposition,
> the alleged factual issue in dispute can be perceived as a "sham," thereby
> not creating an impediment to a grant of summary judgment . . . .

 Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004).

### B.      Jordan's TCPA Claim Fails as a Matter of Law

Here we find that Jordan's complaint now fails as a matter of law, given the undisputed facts before the court, facts which include a series of sworn declarations by Jordan which undermine her own TCPA claim.  As a general matter: " [t]he TCPA makes it unlawful 'to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]' 47 U.S.C. § 227(b)(1)(A)(iii)."  Stoops v. Wells Fargo Bank, N.A., No. CV 3:15-83, 2016 WL 3566266, at *4 (W.D. Pa. June 24, 2016).  "[T]he vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party. See, e.g., Van Patten, 22 F.Supp.3d at 1073–77; Baird v. Sabre Inc., 995 F.Supp.2d 1100, 1106 (C.D.Cal.2014); Emanuel v. L.A. Lakers, Inc., No. CV 12–9936–GW (SHx), 2013 WL 1719035 (C.D.Cal. Apr. 18, 2013); Roberts v. PayPal, Inc., No. C 12–0622 PJH, 2013 WL 2384242 (N.D.Cal. May 30, 2013); Olney v. Job.com, Inc., No. 1:12–CV–01724–LJO, 2014 WL 1747674, at *5 (E.D.Cal. May 1, 2014); Pinkard v. Wal–Mart, No. 3:12–CV–02902–CLS, 2012 WL 5511039, at *2 (N.D.Ala. Nov. 9, 2012); Murphy v. DCI Biologicals Orlando, LLC, No. 6:12–CV–1459–Orl–36KRS, 2013 WL 6865772 (M.D.Fla. Dec. 31, 2013); Steinhoff v. Star Media Co., LLC, No.

13–CV–1750 (SRN/JSM), 2014 WL 1207804 (D.Minn. Mar. 24, 2014); <u>Andersen v.</u>

<u>Harris & Harris</u>, No. 13–CV–867–JPS, 2014 WL 1600575 (E.D.Wis. Apr. 21, 2014).”

<u>Reardon v. Uber Techs., Inc.</u>, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

While consumers can consent to receive such automated calls, and it is

undisputed that Jordan initially consented to receive calls from Sterling by providing

her telephone number to Sterling, “the TCPA allows consumers to revoke their prior

express consent.”  <u>Gager v. Dell Fin. Servs., LLC</u>, 727 F.3d 265, 270 (3d Cir. 2013).

Once consent is revoked further automated calls violate the proscriptions of the TCPA.

However, where “Plaintiff's self-serving and uncorroborated contention that [s]he

revoked consent is contradicted by the overwhelming evidence in the record,” a

defendant is entitled to summary judgment in its favor on a TCPA claim and that claim

should be dismissed.  <u>Cherkaoui v. Santander Consumer USA, Inc.</u>, 32 F. Supp. 3d

811, 815 (S.D. Tex. 2014).

In the instant case, we find that Jordan’s assertion that she revoked her consent,

the lynchpin of her TCPA claim, rests on shifting, and wholly unsubstantiated

contentions, many of which require us to discount and reject Jordan’s own sworn

statements regarding her contacts with Sterling.  Unlike Jordan, we cannot lightly

disregard what the plaintiff has attested to under oath in the past.  Moreover, when we

consider Jordan’s sworn statements, and the other uncontested evidence in the record,

we are constrained to conclude that this claim fails because the competent proof

simply does not permit a finding that Jordan revoked her consent.  Indeed, on this

score we are currently left with little to rely upon beyond Jordan's own contradictory

statements, and other uncontested evidence which undermines Jordan's serial

assertions.

Thus, Jordan initially stated in an unequivocal fashion that she "knows that she

informed defendant to stop calling her in early April 2015."  (Doc. 34-5.)  This

categorical assertion was contradicted by the actual recordings of these April 2015

calls, recordings which simply did not support Jordan's claim that she revoked her

consent.  Quite the contrary, in these communications Jordan or the person answering

the telephone on her behalf either hung up on the caller, or indulged in unresponsive

and nonsensical exchanges.  Standing alone, this evidence may defeat Jordan's claims

entirely since those claims rest upon the factual premise set forth in her complaint and

answers to interrogatories, that she unequivocally revoked her consent in April of

2015, a claim which is now undeniable incorrect.  See Vulcan Pioneers of New Jersey

v. City of Newark, 374 F. App'x. 313 (3d Cir. 2010) (affirming summary judgment in

the defendant's favor on the grounds that the plaintiff's allegations were limited to

those in his complaint, and that he never sought to amend his complaint)

However, when Jordan's initial chronology collapsed under the weight of the evidence, Jordan revised her recollection of these events, stating that she may have revoked her consent prior to April 2015, in February or March 2015. This revised chronology did not explain why she continued to entertain calls from Sterling in April, 2015, after she had ostensibly revoked her consent. Furthermore, while Sterling was unable to retrieve these earlier recorded conversations, it was able to produce a log of its communications with Jordan in February and March of 2015. That call log, and other sworn statements made by Jordan in her responses to interrogatories, further contradicted this revised factual claim in ways which are unexplained. Moreover, even this revised chronology was contradicted by other sworn statements made by Jordan in her answers to interrogatories. Specifically, Jordan has sworn that: "Plaintiff remembers instructing a male representative of defendant to stop calling her. In response to her revocation, the male representative told her she owed and [sic] a debt and should pay it." (Doc. 34-5, ¶12.) Sterling's call logs reflect only three occasions in February and March of 2015, when Jordan spoke over the telephone with a representative of Sterling. In none of these call logs is there any indication that Jordan revoked her consent to speak with Sterling representatives on the telephone. Thus, these call logs are all entirely inconsistent with Jordan's claim that she revoked her consent to receive calls in February or March 2015. Further, these call logs

contradict Jordan's account of events in another, fundamental way.  To the extent that Jordan's TCPA claim rested upon her claim that, "Plaintiff remembers instructing a male representative of defendant to stop calling her," (Doc. 34-5, ¶12.), it is entirely uncontradicted that the Sterling representatives who spoke to Jordan in February and March of 2015 were women, not men.  (Doc. 43-2.)

In sum, we are presented with a TCPA claim by the plaintiff which relied upon two sworn statements made by the plaintiff, both of which are demonstrably false. Therefore, Jordan's TCPA claim can no longer rest upon her allegation that she "knows that she informed defendant to stop calling her in early April 2015," (Doc. 34-5.), since that claim is plainly incorrect.  Nor can she try to salvage this TCPA claim by alleging that at some time prior to April 2015, "Plaintiff remembers instructing a male representative of defendant to stop calling her," (Doc. 34-5, ¶12.), since the only Sterling representatives who spoke to Jordan in February and March of 2015 were women, not men.  (Doc. 43-2.)

We are mindful that:  "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient," Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.

1985). We also recognize that a plaintiff cannot avoid summary judgment and create a disputed issue of fact simply through the expedient, unsupported, denial of her own past sworn statements. See Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004.) In this case, Jordan's initial sworn declarations, and the other disputed evidence, wholly undermine her TCPA claim, and Jordan's subsequent efforts to recant or recast her sworn statements are insufficient to create a genuine issue of material fact in this case. In short, confronted with overwhelming and undisputed evidence which contradicts her claim that she revoked her consent in specific ways at particular times Jordan provides merely contradictory, colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. Such speculative proof cannot defeat a motion for summary judgment. Therefore, we recommend that the court grant this motion for summary judgment and enter judgment in favor of the defendants.

## IV.   Recommendation

For the forgoing reasons, IT IS RECOMMENDED THAT the defendant's motion for summary judgment (Doc. 33.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of November 2016.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge